# United States District Court
## for the Northern District of Oklahoma

---

Case No. 26-cr-75-JDR-1

---

UNITED STATES OF AMERICA,

*Plaintiff*,

*versus*

GEOVANNY ALEXANDER PINEDA CUBIAS, *previously named as* GEO-VANNY ALEXANDER PINEDA CUBIAS, *also known as* EL GUERO, *previously named as* GEOVANNY ALEXANDER PINEDA-CUBIAS,

*Defendant*.

---

## OPINION AND ORDER

---

Defendant Geovanny Alexander Pineda Cubias was under investigation by the Bureau of Alcohol, Tobacco, Firearms, and Explosives, the Drug Enforcement Administration, Oklahoma Highway Patrol, Immigration and Customs Enforcement, and the Tulsa County Sheriff's Office. Dkt. 1 at 2.[1] Mr. Pineda Cubias is in the United States illegally, is a citizen of El Salvador, and has an active immigration removal order. Dkt. 39 at 1-2. On February 6, 2026, Oklahoma Highway Patrol officers identified Mr. Pineda Cubias as a passenger in another person's car and executed a traffic stop. *Id.* at 3.

The officers removed Mr. Pineda Cubias and the driver from the vehicle and searched the vehicle as part of a protective sweep. *Id.* The officers located a firearm in the vehicle's glove compartment. *Id.* Afterwards, the driver gave the officers consent to search the vehicle. *Id.* at 4. Mr. Pineda Cubias was taken into custody after the stop and was later charged with being

---

[1] All citations use CM/ECF pagination.

No. 26-cr-75

an alien unlawfully in the United States in possession of a firearm and ammunition, possession of cocaine with intent to distribute, maintaining a drug-involved premises, and possession of firearms in furtherance of drug trafficking crimes. *Id.* at 3; Dkt. 13.

After Mr. Pineda Cubias was arrested, he asserted his speedy trial rights and discovery began. Dkt. 19. Mr. Pineda Cubias's first attorney and the Government negotiated and came to an agreement about disclosures, but many of these disclosures were delayed. The Government was ordered to produce its discovery on or before March 20, 2026, and to produce a DEA lab report upon receipt. *Id.* The Government produced some discovery materials in accordance with the Court's scheduling order but produced other documents after the March 20 production deadline.

Mr. Pineda Cubias now moves to suppress evidence incident to the stop and search of the vehicle, arguing that the officers did not have probable cause to stop the vehicle or conduct a protective sweep. Dkts. 26, 35. The Court holds that the officers had probable cause (more than the required reasonable suspicion to conduct a traffic stop) to stop the vehicle based on the information gathered and provided in the affidavits for the search warrant for Mr. Pineda Cubias's house. Mr. Pineda Cubias's challenge to the search of the car's glove compartment fails because he lacks standing to object to the search of the vehicle.

Mr. Pineda Cubias also moves to exclude all evidence produced to him after the March 20 deadline. Dkts. 27, 34, 36. The Court denies the motion as to the Government's good-faith disclosure on April 7, 2026, grants Mr. Pineda Cubias's motion in part with respect to any evidence in the Government's possession on March 20 but not produced by April 8, and denies it in part without prejudice as to Mr. Pineda Cubias's ability to challenge discrete evidence based upon the timeliness of the Government's production of that evidence.

2

No. 26-cr-75

I

As a matter of law, an officer need only have "reasonable suspicion" of criminal activity to stop a vehicle. *Sisneros v. Fisher*, 685 F. Supp. 2d 1188, 1204 (D.N.M. 2010). This means the officer needs a "particularized and objective basis" for suspecting criminal activity by the person being stopped by the officer. *United States v. White*, 584 F.3d 935, 949 (10th Cir. 2009). Police "may also stop a car solely to investigate a passenger's conduct." *Brendlin v. California*, 551 U.S. 249, 257 n.3 (2007).

At the motion hearing, the Court heard sworn testimony from a member of the Oklahoma Highway Patrol that the officers involved in the stop had been informed that Mr. Pineda Cubias had an active immigration removal order. Knowledge that a passenger has an active removal order against him or her is sufficient to create reasonable suspicion to stop a vehicle. *Cf. United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975) (holding "officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country"). The Court holds that the officer had probable cause to stop the vehicle and will not suppress evidence based on the stop itself.

Reasonable suspicion to stop a vehicle does not permit an officer to search the vehicle's contents, as "the Fourth Amendment unquestionably prohibits the search of a vehicle's interior unless law enforcement officials receive consent, have a warrant, or otherwise establish probable cause to support the search." *United States v. Forbes*, 528 F.3d 1273, 1277-78 (10th Cir. 2008). But Fourth Amendment protections do not extend to mere passengers. Even assuming the search was unlawful, the vehicle in question did not belong to Mr. Pineda Cubias. Dkt. 26 at 2. And a passenger in a car does not have standing to challenge the search or seizure of the car without showing a possessory interest in the vehicle. *United States v. McKneely*, 6 F.3d 1447, 1450 (10th Cir. 1993). Mr. Pineda Cubias has not presented evidence that he has a

3

possessory interest in the car, and in his motion he characterizes the car as belonging to the driver. Dkt. 26 at 2.

Whatever the legality of the search, Mr. Pineda Cubias cannot object to evidence from the search being introduced against him. His Fourth Amendment rights were not at issue; only the rights of the vehicle's owner were impaired. Since the stop was founded on reasonable suspicion and Mr. Pineda Cubias has no standing to challenge the seizure, the Court denies Mr. Pineda Cubias's motion to suppress evidence stemming from the February 6 traffic stop.

## II

Mr. Pineda Cubias asks the Court to suppress recently produced evidence. Dkt. 27 at 2; Dkts. 34, 36. He argues that the Government was obligated to disclose those materials in its possession that were (i) material to the preparation of Mr. Pineda Cubias's defense; (ii) intended for use in the Government's case-in-chief; or (iii) obtained from Mr. Pineda Cubias. *See* Fed. R. Crim. P. 16(a)(1)(E). In the Court's scheduling order, which was agreed to by the parties, the Government was obligated to produce responsive materials in its possession on or before March 20, 2026. Dkt. 19. But Mr. Pineda Cubias contends that the Government produced significant information—including 279 GB of data, a supplemental report from the Oklahoma Highway Patrol, 100 bates-stamped documents, a Nexus report, and other documents—on or after April 7, 2026, well after the Court's production deadline. *See* Dkt. 27 at 4; Dkt. 34 at 2; Dkt. 36 at 1-2. Mr. Pineda Cubias argues that, given the looming trial date, suppression of the belatedly produced evidence is the appropriate remedy under Rule 16(d)(2). *See* Dkt. 27 at 4; Dkt. 34.

The Government argues otherwise. It notes that it timely provided initial discovery and reports after Mr. Pineda Cubias made his initial appearance and reproduced its initial discovery on March 12, 2026. The Government acknowledges that there was a delay in delivering a hard drive to Mr.

4

No. 26-cr-75

Pineda Cubias's current counsel, Mr. Noland, but the Government maintains that this delay was the result of the prior counsel's withdrawal and pursuant to an agreement by the parties to drop off a hard drive after a hearing. Dkt. 38 at 2-4. The Government notes that Mr. Noland received much of the challenged evidence within five days of his appointment; other evidence was produced soon after the Government received it. *Id.* at 4-5. It argues that, because it acted in good faith, the Court could (and should) address any prejudice caused by the delay by granting a continuance rather than suppressing the evidence. *Id.* at 5 (quoting *United States v. Muessig*, 427 F.3d 856, 864 (10th Cir. 2005). Mr. Noland stated at the hearing that notwithstanding the late production of discovery, he would be ready for trial on the original trial date, May 4, 2026. Although the late production may place a burden on Mr. Noland to marshal the discovery to prepare for trial, he indicates that he will be prepared.

There are three categories of evidence at issue here: The first consists of evidence produced by the Government before the March 20, 2026 discovery deadline. The second category consists of the April 7, 2026 production, which includes approximately 279 GB of electronic information pertaining to Instagram accounts, as well as photos and videos, some of which are in Spanish. Dkt. 27 at 4. The third category includes all other evidence that was not produced on or before April 7, 2026.

The first category of evidence is easily addressed. There is no harm in permitting the Government to use materials it produced on or before the March 20 discovery deadline, and there is no basis for excluding that evidence under Rule 16. That evidence will not be excluded based on the timeliness of the Government's production.

The April 7 production presents a thornier issue. It is true that the Government failed to produce the requested information by the discovery deadline. And it is true that there is a burden associated with translating that

information before the May trial date. But it is also true that the April 7 production appears to be the result of an agreed-upon arrangement between the Government and Mr. Pineda Cubias's counsel. The Government represents that it spoke with Mr. Pineda Cubias's prior counsel on March 23 and was advised that a motion to withdraw would soon be filed. It further represents that it spoke with current defense counsel, Mr. Noland, on April 1 and that Mr. Noland agreed to "drop a hard drive off for discovery" after the April 2 hearing on the motion to withdraw. Dkt. 38 at 3. The Government received the hard drive on Thursday, April 2, and Mr. Noland (who has an office in Oklahoma City) indicated he would be back in Tulsa on Friday, April 3 and Tuesday, April 7. The Government advised Mr. Noland that it would attempt to produce the materials on April 2, but that the materials "would most likely be ready on Tuesday." *Id.* at 3-4. The April 7 production was, therefore, made pursuant to an agreed-upon arrangement between the parties. There is no indication that Mr. Noland ever objected to this arrangement, which is corroborated in part by Mr. Pineda Cubias's recitation of relevant facts. Dkt. 27 at 2-3.

Since the April 7 production appears to be the result of an agreement reached by counsel in good faith following a change in representation, the Court is reticent to impose the harsh sanction of exclusion. *See Muessig*, 427 F.3d at 864 (indicating that courts should consider whether the Government acted in good faith when selecting a proper sanction). The delay was not insubstantial, but it was not egregious under the unique circumstances associated with the change in counsel. Indeed, it is not clear what benefit, if any, would have been obtained by an earlier production, and the Court cannot say with certainty that Mr. Pineda Cubias was necessarily prejudiced as a result of the portion of the delay that was not agreed upon by the parties. True, some of the information produced by the Government is in Spanish, not English. But Mr. Pineda Cubias has not presented any information concerning the number of pages or the length of any audio conversations in the April 7

production that require translation, the time and cost of achieving that translation, or the extent to which Mr. Pineda Cubias could assist counsel by identifying which portions of the social media accounts reflected in the data have no bearing on the case and can be disregarded. The evidence available to the Court does not suggest that the prejudice to Mr. Pineda Cubias resulting from the Government's good-faith production on April 7 is significant enough to warrant sanctions. The evidence produced on April 7 will not be excluded under Rule 16.

The third and final category of evidence consists of those documents (other than the lab report not addressed by Mr. Pineda Cubias's motion) that were produced on April 8 or later. The admissibility of those documents will depend upon the date those materials were available to the Government. Generally speaking, the Government will be permitted to utilize those materials that were not in its possession on April 7 and were produced within a reasonable timeframe after the Government came into possession of the materials (such as the report that was generated and on April 9, 2026, and produced on the same day). Dkt. 38 at 6. And the Government will not be permitted to utilize evidence that it had in its possession before the March 20 discovery deadline but did not produce until April 8 or later. At this point, however, the Court lacks any precise details concerning what portions of the Government's later productions included materials that could have been produced at an earlier date. Without that information, it is not possible to address the reasonableness of any delay by the Government or the prejudice caused by the delay, if any. Accordingly, the Court grants Mr. Pineda Cubias's motion in part with respect to any evidence in the Government's possession on March 20 and not produced by April 8; the Court otherwise denies the motion without prejudice to Mr. Pineda Cubias's ability to challenge discrete evidence based upon the timeliness of the Government's production of that evidence.

No. 26-cr-75

### III

For the reasons stated above, Mr. Pineda Cubias's motion to suppress [Dkt. 26] and corresponding supplement [Dkt. 35] are denied. Mr. Pineda Cubias's motions to exclude [Dkts. 27, 34] and corresponding supplement [Dkt. 36] are denied in part as to all materials disclosed before March 20, granted in part with respect to any evidence in the government's possession on March 20 but not produced by April 8, and denied in part as to all other materials without prejudice to Mr. Pineda Cubias reraising the issue for discrete evidence. The Government is ordered to provide a log of discovery produced after April 8, 2026, that includes the date that the discovery came into the Government's possession.

DATED this 23rd day of April 2026.

_____
JOHN D. RUSSELL
*United States District Judge*

8